**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**DAWNA FERDINANDSEN, et al.,**

Plaintiffs,

v.

**GENERAL MOTORS, LLC, et al.,**

Defendants.

CASE NO. 3:26 CV 498

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

*Pro se* Plaintiffs Dawnya Ferdinandsen, Joe Roper, Delana Johnson, and Sandra Swy bring suit against: (1) General Motors ("GM") LLC, Arden Hoffman, Leticia Pickens, and Jeff Morris (hereinafter, "GM Defendants"); (2) Jeff King, Toledo Propulsion Plant UAW Chairman; Chris Hunt, Shop Committeeman; Dave Green, UAW Regional Director; Mike Booth, International UAW Vice President; and Chris Webb, International UAW Representative ("Union Defendants"); and (3) Anne Anaya and Ashley Beitler. *See* Doc. 1-2.[1] Jurisdiction is proper under 28 U.S.C. § 1331 and 1367. Currently pending before the Court are Plaintiffs' Motion to Remand (Doc. 8); Plaintiffs' Motion to Disqualify Counsel for Defendants (Doc. 9); Union Defendants' Motion to Dismiss (Doc. 5); GM Defendants' Motion to Dismiss (Doc. 7); Plaintiffs' Motion for Preservation Order (Doc. 16); and Plaintiffs' Motion for Leave to File First Amended Complaint. (Doc. 28). All motions are fully briefed and decisional. *See* Docs. 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 29, 30, 31. The Court addresses each below.

1. Anaya and Beitler have not yet been served in this litigation, nor has counsel entered an appearance on their behalf. Plaintiffs assert Anaya and Beitler are GM employees, whereas the GM Defendants claim they are employees of third-party Sedgwick.

## Background

Factual Background

In their Complaint, Plaintiffs generally allege GM and its managers at the Toledo Propulsion Plant at 1455 W. Alexis Road in Toledo, Ohio "have repeatedly insisting on violating the legal protections afforded to eligible individuals," including Plaintiffs, under the Family and Medical Leave Act ("FMLA"). (Doc. 1-2, at 3). The Complaint then asserts the following facts (described as "examples"). *See id.*

GM has withheld Plaintiffs' pay for hours worked because Plaintiffs used FMLA before or after a worked holiday and "managers have placed the usage of FMLA under their call off[/]blackout day attendance policy." *Id.* at 4. GM's "National Agreement" or the collective bargaining agreement ("CBA") states it will follow FMLA laws, but it is "common practice" to violate the agreement which is "[b]ad faith bargaining and breach of [the] CBA." *Id.*

"UAW breaches its contract by refusal to uphold its language" by telling Plaintiffs and other represented members "they cannot grieve any FMLA violations," which leaves these individuals "without due process" and with "[n]o agreed upon grievance of procedural rights or recourse availab[le] to [P]laintiffs." *Id.*

GM "refuses to pay for worked hours" and "force[s] employees to work 24/7." *Id.* If GM "feels you have no right to use FMLA" on a particular day "they simply withhold pay as a punishment." *Id.*

GM managers and UAW representatives "continually preach to members that FMLA is the reason for attendance issues" and the "FMLA users are just lazy," causing other union members to "blame FMLA users for the long-worked hours and days." *Id.* Plaintiffs contend Defendants promote these assertions on social media platforms. *Id.*

Plaintiffs further allege during the latest contract negotiations, Pickens and Morris, "with the blessing of" King, made "[a] unilateral change . . . and policy was injected." *Id.* This policy states if an individual cannot work 8 hours per day / 40 hours per week, they are "placed out on disability even though the only FMLA . . . restriction is for 8 hour days 40 hours a week." *Id.* "[GM] claims they have no work available" for these individuals "even though there are areas where this is possible." *Id.* "The FMLA user is then thrown out on disability even though they can meet their full job requirements up to 8 hours per day, 40 hours a week." *Id.* Plaintiffs have requested to view this policy change and have it posted, but both GM and the union have denied that request. *Id.* at 5.

Plaintiffs contend employees who use FMLA are "oftentimes placed at the bottom of the overtime sheets, thus preventing FMLA users from having the same opportunities for overtime that [are] afforded to non FMLA users." *Id.*

GM uses third-party Sedgwick to review (and approve or deny) FMLA requests. *Id.* Plaintiffs assert Sedgwick "will grant the eight hour per day, 40 hour per week doctor ordered restrictions and then General Motors LLC and managers will, in turn, punish an employee for the restrictions." *Id.*

Finally, Plaintiffs contend GM, "with UAW blessing" operates under a "Dock 83 policy," which overrides "the agreed National Agreement on Overtime." *Id.* They contend the National Agreement allows GM to "pick Plan A or B for overtime" but "**[i]t does not say**: Toledo propulsions can do a separate vote stating that they can operate on a permanent basis under a policy designed to be a temporary attachment to Plan A or B for emergency operation needs only." *Id.*

Plaintiffs seek compensatory and injunctive relief. *Id.*

Plaintiffs list eleven claims: (1) breach of the CBA; (2) FMLA discrimination and retaliation; (3) wage theft; (4) disability fraud; (5) involuntary servitude; (6) insurance fraud; (7) due process interference; (8) bargaining in bad faith; (9) hostile work environment; (10) unilateral changes during negotiations; and (11) HIPAA violations. *See id.* at 3.

Procedural Background

Plaintiffs originally filed their Complaint in the Lucas County Court of Common Pleas on January 23, 2026. *See id.* at 2. GM Defendants removed the case to this Court on February 27, 2026. (Doc. 1). Therein, they represented the Union Defendants, through counsel, had consented to removal, *id.* at 2-3, and attached an email from Union Defendants' counsel to that effect, *see* Doc. 1-4. The GM Defendants and the Union Defendants filed separate motions to dismiss on March 6, 2026. (Docs. 5, 7). On March 16, 2026, Plaintiffs filed a Motion to Remand. (Doc. 8). On March 24, 2026, Plaintiffs filed a Motion to Disqualify Counsel for Defendants (Doc. 9),[2] and on April 10, 2026, Plaintiffs filed an Emergency Motion for Preservation Order (Doc. 16). Finally, on May 12, 2026, Plaintiffs filed a Motion for Leave to File First Amended Complaint (Doc. 28).

## DISCUSSION

The Court will first address Plaintiffs' Motion to Remand (Doc. 8), followed by Plaintiffs' Motion to Disqualify Counsel. (Doc. 9). Next, the Court considers Plaintiffs' Emergency Motion for Preservation. (Doc. 16). Finally, the Court addresses the Motions to Dismiss brought by the GM Defendants and the Union Defendants (Docs. 5, 7) and Plaintiffs' Motion for Leave to Amend (Doc. 28).

2. On April 20, 2026, Plaintiffs filed a separate motion requesting oral argument on the Motion to Disqualify. (Doc. 22).

Motion to Remand

Plaintiffs move to remand, contending the GM Defendants' removal of this action was procedurally defective. (Doc. 8). Specifically, Plaintiffs contend: (1) the unanimity requirement of 28 U.S.C. § 1446(b)(2)(a) was not satisfied; (2) Plaintiffs were not properly served with the Union Defendants' consent to removal; (3) the GM Defendants have improperly spoken for the Union Defendants; (4) the Sedgwick Defendants' status is disputed; and (5) all doubts must be resolved in favor of remand. *Id.* at 2-5. Both GM Defendants and Union Defendants oppose. (Docs. 10, 11). Plaintiffs reply. (Doc. 17).[3]

A defendant may remove any civil action in state court "of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). After removal, a plaintiff may bring a motion to remand to state court under 28 U.S.C. § 1447(c). The removing party bears the burden of showing federal jurisdiction exists. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871-72 (6th Cir. 2000). The Court must grant the motion to remand if it finds it lacks jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because removal jurisdiction raises significant federalism concerns, the Court must resolve all doubts as to the propriety of removal in favor of remand. *First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 464 (6th Cir. 2002) (explaining "removal statutes must be narrowly construed" as they were "adopted in order 'to restrict rather than expand the scope

3. Plaintiffs also filed a "Notice of Supplemental Authority" as to, in part, this Motion. (Doc. 18). The Court's rules provide for a motion, opposition, and reply. *See* Loc. Civ. R. 7.1. No additional briefing is authorized under this Court's Local Rules. "[C]ourts agree that neither local rules . . . nor the Federal Rules of Civil Procedure authorize a non-moving party to file a sur-reply, and that to file a sur-reply the party must obtain leave of the court." *Eberhard v. Chicago Title Ins. Co.*, 2014 WL 12756822, at *2 (N.D. Ohio) (collecting cases). Moreover, "[t]he purpose of a Notice of Supplemental Authority is to inform the Court of newly decided cases that are relevant to the dispute before it; it is not a means to submit additional argument or factual evidence." *Schnellecke Logistics USA LLC v. Lucid USA Inc.*, 2023 WL 5720242, at *1 (D. Ariz.).

of removal from the state courts'") (quoting *Andrews v. Elec. Motor Sys., Inc.*, 767 F. Supp. 853, 855 (S.D. Ohio 1991)).

As Plaintiffs correctly identify, 28 U.S.C. § 1446(b)(2)(A) provides: "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." This requirement was satisfied here. Defendants stated in their notice of removal that counsel for the Union Defendants consented to removal (Doc. 1, at 2-3), and attached an email from the Union Defendants' counsel confirming such consent (Doc. 1-4). In their briefing, the Union Defendants further confirm they consented. *See* Doc. 10, at 2-3. This is sufficient. *See City of Cleveland v. Deutsche Bank Tr. Co.*, 571 F. Supp. 2d 807, 815 (N.D. Ohio 2008) ("[A] party seeking to remove a case to federal court need do no more than obtain the consent of his fellow defendants and make a timely representation of that consent to the court. The individual co-defendants are not required to do anything (other than to indicate their consent verbally to the removing defendant's lawyer and, if the defendant is a corporation, do so through an attorney)."). Nor does 28 U.S.C. § 1446(d) require Plaintiffs to be served with the consent to removal itself; rather, it requires service only of the notice of removal. Plaintiffs were served with the Notice of Removal and its attachments. *See* Doc. 1, at 5.

The Court similarly finds Plaintiffs' other procedural objections to removal unpersuasive. Plaintiffs' Motion to Remand (Doc. 8) is denied.

<u>Motion to Disqualify</u>

Plaintiffs next move to disqualify counsel for both the Union Defendants and the GM Defendants. (Doc. 9). Plaintiffs further move for oral argument on their Motion. (Doc. 22). Both motions are fully briefed. *See* Docs. 13, 14, 18, 21, 23, 25, 27. As to counsel for the Union Defendants, Plaintiffs contend they have "engaged in impermissible ex parte coordination" with

counsel for GM Defendants, and have "filed nothing whatsoever in this Court." (Doc. 9, at 2). As to counsel for the GM Defendants, Plaintiffs assert a "structural conflict of interest" because the firm "is simultaneously representing a party from Stellantis, another major automotive employer, in a separate federal proceeding" involving similar legal claims. *Id.* at 6. In support of their Motion, Plaintiffs cite Ohio Rules of Professional Conduct 1.7 (Conflict of Interest: Current Clients), 1.3 (Diligence), and 8.4(c) (Misconduct). *Id.* at 7.

Disqualification is one remedy the Court may employ in order to ensure the ethical practice of law. This power "derives from [the Court's] inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3rd Cir. 1980). When considering whether to disqualify counsel "courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice." *Hamrick v. Union Twp.*, 81 F. Supp. 2d 876, 878 (S.D. Ohio 2000).

Disqualification is appropriate "only when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred and, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his own choice." *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257 (S.D. Ohio 1991) (quoting *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir. 1979)).

"Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *In re Valley–Vulcan Mold Co.*, 237 B.R. 322, 337 (6th Cir. BAP 1999) (citation modified), *aff'd*, 5 F. App'x 396 (6th Cir. 2001).

First, the Court finds Plaintiffs have not established any basis to disqualify counsel for the Union Defendants. As set forth above, there was nothing improper about the process by which the GM Defendants obtained the Union Defendants' consent to removal or communicated that consent to the Court. Nor was the Union Defendants' emailed consent to removal an *ex parte* communication because it did not involve the Court. *See, e.g.*, *State v. Pickens*, 60 N.E.3d 20, 26 (Ohio Ct. App. 2016) ("An ex parte communication is a communication concerning a substantive matter in a case between the decision-maker and an adverse party, without notice to an affected party."). Moreover, the Union Defendants have timely appeared in the instant case and separately filed a motion to dismiss (Doc. 5) and numerous additional filings.

Second, the Court similarly finds Plaintiffs have not established any basis to disqualify counsel for the GM Defendants. For the same reasons stated above, there was nothing improper about obtaining consent for removal. Plaintiffs misunderstands the conflict of interest rules. Under the Ohio professional conduct rules:

> (a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:
>
> > (1) the representation of that client will be directly adverse to another current client;
> >
> > (2) there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

Ohio R. Prof. Cond. 1.7. Plaintiffs argue counsel should be disqualified because they represent unrelated parties in unrelated legal actions involving similar legal issues. (Doc. 9, at 10). Upon careful review, the Court finds Plaintiffs have simply not established counsel for the GM Defendants is operating under a conflict of interest. Nor does the Court find Plaintiffs' supplemental filing (Doc. 23) identifies any conflict of interest. Therein, Plaintiffs argue the same law firm defending the same defendants in two separate proceedings is improper. *Id.* at 3-5.

But there is no inherent conflict of interest in a firm or attorney representing the same defendant in separate matters, just as there is no inherent conflict of interest in representing separate defendants in cases involving similar legal claims. Plaintiffs have also not identified any specific conflict or other violation of the Rules of Professional Conduct.

For the reasons set forth above, Plaintiffs' Motion to Disqualify (Doc. 9) is denied. Plaintiffs' Motion for Oral Argument (Doc. 22) is denied as moot.[4]

Motions to Dismiss / Motion to Amend

Both the GM Defendants and Union Defendants moved to dismiss Plaintiffs' Complaint. *See* Docs. 5, 7. Plaintiffs filed a combined opposition thereto, wherein they raised factual allegations not contained in their original Complaint as well as attached documentation. *See* Doc. 12. Defendants replied (Docs. 19, 20). One month after these replies were filed, Plaintiffs filed a Motion for Leave to file First Amended Complaint. (Doc. 28). The proposed Amended Complaint consists of 63 pages in contrast to the original Complaint's six pages and contains significantly more factual detail. *Compare* Doc. 28-2 *with* Doc. 1-2. Defendants oppose the amendment, primarily on futility grounds; both GM and Union Defendants additionally incorporate or reference arguments previously made in their original motions to dismiss. *See* Docs. 29, 30. The GM Defendants also argue bad faith and undue prejudice. (Doc. 30, at 13-15).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true.

4. Local Civil Rule 7.1(g) provides that a Judge "may . . . rule on any opposed motion without hearing any time after the time for filing a reply memorandum has elapsed." The Court finds oral argument unnecessary to resolve the motion.

*Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but he or she must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998). And *pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Federal Civil Rule 15(a) provides, in relevant part, that after a responsive pleading is served, a party may amend his pleading "only by leave of court," which "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001). Factors for courts to consider in determining whether to grant leave to amend include "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)); *see also Oleson*, 27 F. App'x at 569. Courts have interpreted Rule 15(a) "as setting forth a 'liberal policy of permitting amendments to ensure the determination of claims on their merits.'" *Oleson*, 27 F. App'x at 569 (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)). Under this liberal standard, a party's delay in seeking an amendment is not sufficient reason standing alone to deny the motion to amend. *Id.*; *see also Coe*, 161 F.3d at 341 ("Delay by itself is not sufficient reason to deny a motion to amend.") (quoting *Brooks*, 39 F.3d at 130). Instead, "[n]otice and substantial prejudice

to the opposing party are critical factors in determining whether an amendment should be granted." *Coe*, 161 F.3d at 341–42 (quoting *Brooks*, 39 F.3d at 130). A district court has discretion in ruling on such a motion. *Id.* at 341.

While futility is a permissible basis for denying a motion for leave to amend, courts retain discretion to grant the motion and allow the substantive legal issues to be addressed through a fully briefed motion to dismiss under Rule 12(b)(6). *See Restocon Corp. v. Metro. Knoxville Airport Auth.*, 2023 WL 6614416, at *2 (E.D. Tenn.) ("[M]any courts, for reasons of practicality, decline to engage in a futility analysis at the motion to amend phase and opt instead to assess questions of plausibility later when ruling on the motion to dismiss."); *see also Summit Locations v. Neal*, 2026 WL 1602725, at *3 (E.D. Ky.) ("Although the Plaintiff's amendments may ultimately prove unavailing, the Court finds it most prudent to refrain from determining the merits of the amended complaint on a fractured record."); *Kellogg Co. v. FPC Flexible Packaging Corp.*, 2012 WL 769476, at *4 (W.D. Mich.) ("The more orderly procedure is to allow filing of the amended pleading, without prejudice to any party's ability to file an appropriate motion to dismiss under Fed. R. Civ. P. 12(b), which the parties and the court can then address under the procedures appropriate to motions of a dispositive nature.").

Given the early stages of this case, and that the futility standard essentially requires the Court to engage in a 12(b)(6) analysis, the Court finds it most practical to assess the merits of the Amended Complaint after it has been filed and after the Defendants have filed any renewed motions to dismiss. The Court finds Defendants will not be unduly prejudiced by permitting the

Amended Complaint as they remain free to re-raise their futility arguments as arguments for dismissal in response.[5]

The Court therefore grants Plaintiffs' Motion for Leave to File First Amended Complaint. (Doc. 28). The Court will direct the Clerk to file Plaintiffs' Proposed Amended Complaint (Doc. 28-5) as the operative pleading separately on the docket as of the date of this Order.

Because the Court has granted leave to amend and the First Amended Complaint is now the operative pleading, Defendants' earlier-filed Motions to Dismiss the original Complaint (Docs. 5, 7) will be denied without prejudice as moot.

Motion for Preservation

This leaves only Plaintiffs' Emergency Motion for Preservation Order. (Doc. 16). Therein, Plaintiffs request the Court issue a preservation order requiring the GM Defendants "to immediately preserve, and to refrain from destroying, altering, concealing, or modifying, all records, data, files, and information related to Anne Anaya and Ashley Beitler." *Id.* at 1. Anaya and Beitler have not yet been served in this litigation, nor has counsel entered an appearance on their behalf. Plaintiffs assert Anaya and Beitler are GM employees, whereas the GM Defendants claim they are employees of third-party Sedgwick. Specifically, Plaintiffs contend information about Anaya has disappeared from "GM's internal People Finder directory." *Id.* at 3.

As GM Defendants correctly identify, "[g]enerally, preservation orders are unnecessary because parties to civil litigation have 'a duty to preserve relevant information.'" *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, 2016 WL 1657922, at *2 (S.D. Ohio) (quoting *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008)). And the GM Defendants

5. Although the Court understands Defendants' frustration with responding to multiple motions, it also declines the GM Defendants' invitation to find Plaintiffs have acted in bad faith simply because they have filed multiple motions and expanded upon their claims in their Amended Complaint. *See* Doc. 30, at 14.

affirmatively acknowledge that duty, as well as receipt of a litigation hold letter from Plaintiffs. (Doc. 26, at 2). Through counsel, the GM Defendants represent they have not "failed to preserve any relevant evidence" and "appropriate litigation holds have been in place throughout this litigation." *Id.* at 3; *see also* Fed. R. Civ. P. 11(b)(3) (stating attorney or party's representation to the Court in a filing "certifies to the best of the persons' knowledge" that factual contentions therein are supported).

"[I]n general, preservation orders "must be premised on a demonstration that a real danger of evidence destruction exists, a lack of any other available remedy, and a showing that the preservation order is an appropriate exercise of the court's discretion." *Swetlic Chiropractic*, 2016 WL 1657922, at *2 (quoting *John B.*, 531 F.3d at 459). The Court has reviewed Plaintiffs' Motion and additional filings (Docs. 18, 24), and finds Plaintiffs have not established a preservation order is necessary. The Court finds no reason to conclude the GM Defendants have failed to comply with their preservation obligations and expects that they will continue to preserve relevant information. If a preservation or spoliation issue later arises, the Court will address it at that time.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiffs' Motion to Remand (Doc. 8) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that Plaintiffs' Motion to Disqualify Counsel for Defendants (Doc. 9), be and the same hereby is, DENIED; and it is

FURTHER ORDERED that Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 28-5), be and the same hereby is, GRANTED; and it is

FURTHER ORDERED that the Clerk shall file Plaintiffs' First Amended Complaint (Doc. 28-5) separately on the docket as of today's date; and it is

FURTHER ORDERED that the Union Defendants' Motion to Dismiss (Doc. 5), be and the same hereby is, DENIED as moot, without prejudice to refiling; and it is

FURTHER ORDERED that the GM Defendants' Motion to Dismiss (Doc. 7), be and the same hereby is, DENIED as moot, without prejudice to refiling; and it is

FURTHER ORDERED that Plaintiffs' Emergency Motion for Preservation Order (Doc. 16) be, and the same hereby is, DENIED.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: October 5, 2026